IN THE UNITED STATES DISTRICT COURT
FOR THE NORTHERN DISTRICT OF TEXAS
FORT WORTH DIVISION

| | | |
|---|---|---|
| **CHRISTOPHER KALEJAIYE AJAYI,** | § | |
| | § | |
| Movant, | § | |
| | § | |
| v. | § | Civil Action No. 4:23-cv-1106-O |
| | § | (Criminal No. 4:20-cr-290-O(6)) |
| **UNITED STATES OF AMERICA,** | § | |
| | § | |
| Respondent. | § | |

**OPINION and ORDER DENYING MOTION TO VACATE UNDER 28 U.S.C. § 2255 and DENYING CERTIFICATE OF APPEALABILITY**

Before the Court is Defendant Christopher Kalejaiye Ajayi ("Ajayi")'s motion to vacate under 28 U.S.C. § 2255 (ECF No. 1), along with the government's response (ECF No. 9) and Ajayi's reply (ECF No. 10). After considering the § 2255 motion, the response, reply, record, and applicable law, the Court **DENIES** Ajayi's § 2255 motion.

**I.     INTRODUCTION**

Christopher Ajayi was a pharmacist in a "pill mill" drug distribution operation. He was convicted by a jury of five counts—one drug-conspiracy count for each of the three drugs involved (hydrocodone, carisoprodol, and promethazine with codeine) and two drug possession with intent to distribute counts for hydrocodone and carisoprodol. Jury Verdict 1-2, CR ECF No. 1209; Presentence Report ("PSR") ¶¶ 4-5, CR ECF No. 1574-1.[1] He now seeks to set aside his conviction and sentence. Mot Vacate 1, ECF No.1.

---

[1] "ECF No ___" refers to the docket entries in this civil case number assigned to the § 2255 motion. "CR ECF No. __" refers to the docket entries in the underlying criminal proceeding, *United States v. Ajayi*, 4:20-CR-290-O(6).

## II. BACKGROUND/HISTORY

### A. Unlawful Distribution of Prescription Drugs

In 2016, the Drug Enforcement Administration (DEA) began investigating two medical facilities—one operated by Dr. Mark Capistrano and one by Dr. Tameka Noel. PSR ¶ 11, CR ECF No. 1574-1. While posing as legitimate medical clinics, these two clinics (located side-by-side to one another) were actually "pill mills"—facilities that divert large quantities of controlled substances to the public for illicit distribution. *Id.* Beginning in 2011, Capistrano operated Lancaster Oncology, which was not registered as a pain management clinic but instead purported to treat cancer. PSR ¶ 12, CR ECF No. 1574-1. Through this facility, Capistrano issued prescriptions for controlled substances (including opioid pain medications, muscle relaxers, and cough suppressant with codeine) outside the scope of professional practice and not for any legitimate medical purpose. *Id.* The estimated street value of the substances attributed to Capistrano during the relevant period was approximately $14 million. *Id.*

### B. Ajayi fills Prescriptions for Controlled Substances Knowing they had no Legitimate Medical Purpose.

Ajayi became a pharmacist in 1982. Trial Tr. Vol. 2, 124 CR ECF No. 1900. He worked in various pharmacies until 2009, when he opened his own pharmacy—Remco Pharmacy. *Id.* at 124-27; PSR ¶ 35, CR ECF No. 1574-1. In September 2011, Ajayi and Remco began filling prescriptions for Capistrano, which Ajayi knew were issued outside the scope of professional practice and not for legitimate medical purposes. PSR ¶ 35. Several cooperating coconspirators corroborated that Remco was a complicit pharmacy. *Id.* One recruiter known as "Old School" used Remco to fill illegitimate prescriptions, and later a recruiter named Wayne Kincade began using Remco to fill prescriptions for his recruits too. *Id.* Using a combination of Capistrano's prescription history and data from the Texas Board of Pharmacy's Prescription Monitoring

Program (PMP), investigators were able to determine that from September 7, 2011, to April 14, 2017, Ajayi and Remco distributed the following controlled substances under Capistrano's prescriptions:

- 9,142 hydrocodone pills (10 mg);
- 1,860 carisoprodol pills;
- 720 alprazolam pills; and
- 1,800 milliliters of promethazine with codeine.

*Id.* Remco closed in 2017 because, in August 2016, Ajayi was shot multiple times in an armed robbery by an individual demanding controlled substances, and Ajayi later closed the pharmacy to recover from those injuries., PSR ¶ 36, CR ECF No. 1574-1.; Trial Tr. Vol. 2 197-98, CR ECF No. 1900.

Then, in August 2018, Ajayi partnered with Wilkinson Oloyded Thomas, a co-defendant in this case, to open Remcare Pharmacy. PSR ¶ 37, CR ECF No. 1574-1. Ajayi resumed filling illegitimate prescriptions for Capistrano at Remcare, with Kincade returning to fill prescriptions for a number of his recruits. *Id*. Ajayi charged Kincade $245 cash to pick up each prescription and required him to pick up non-controlled prescriptions at the same time, in order to avoid detection. *Id.* Ajayi also limited the number of recruits that Kincade could pick up for at any one time, and he restricted "new patients" from Capistrano. *Id*.; Trial Tr. Vol. 2, 13, CR ECF No. 1900. From January 2019 through June 2020, Remcare and Ajayi dispensed illegally obtained controlled substances for Capistrano with an estimated street value of $209,000. PSR ¶ 18, CR ECF No. 1574-1.

    C.    **Ajayi's Arrest, Jury Trial, and Conviction on Five Counts.**

3

Ajayi was ultimately arrested and named in a 24-count superseding indictment that charged 15 individuals for their role in the pill-mill conspiracy. Second Superseding Indictment 6-10; CR ECF No. 612; PSR ¶ 4, CR ECF No. 1574-1. Ajayi was charged with the following:

• Count One: Conspiracy to Dispense and Distribute, or Possess with Intent to Dispense and Distribute Hydrocodone, in violation of 21 U.S.C. §§ 846 & 841(a)(1) & (b)(1)(c).

• Count Two: Conspiracy to Dispense and Distribute, or Possess with Intent to Dispense and Distribute Carisoprodol, in violation of 21 U.S.C. §§ 846 & 841(a)(1) & (b)(1)(E)(2).

• Count Three: Conspiracy to Dispense and Distribute, or Possess with Intent to Dispense and Distribute Promethazine with Codeine, in violation of 21 U.S.C. §§ 846 & 841(a)(1) & (b)(1)(E)(3).

• Count Eight: Possession with Intent to Distribute and Dispense Hydrocodone, and Aiding and Abetting, in violation of 21 U.S.C. §§ 841(a)(1) & (b)(1)(C) & (E)(2) and 18 U.S.C. § 2.

• Count Nine: Possession with Intent to Distribute and Dispense Carisoprodol, and Aiding and Abetting, in violation of 21 U.S.C. §§ 841(a)(1) & (b)(1)(C) & (E)(2) and 18 U.S.C. § 2.

Second Superseding Indictment 6-10, CR ECF No. 612. Ajayi pleaded not guilty and proceeded to trial. PSR ¶ 5, CR ECF No. 1574-1.

Ajayi's trial commenced on March 1, 2021. Trial Tr. Vol 1, 1, CR ECF No. 1899. The trial centered on Ajayi's knowledge of the illegitimacy of the "prescriptions" he filled for Capistrano. The government presented testimony from three investigators, two medical experts, and one cooperating defendant, Kincade. Kincade Tr. 1-64, CR No. 1683; Trial Tr. Vol. 1, 62-275, CR ECF No. 1899; Trial Tr. Vol. 2 40-118, CR ECF No. 1900 at 40-118. These trial witnesses testified that numerous red flags existed in this case to indicate that the prescriptions Ajayi filled were illegal, including:

4

• Capistrano was prescribing excessive controlled substances in relation to his area or specialty, and he was not running a registered pain management clinic;

• He was "pattern prescribing"—patients were given the same dangerous combination of controlled substances in the same strength and in similar or the same quantities;

• Ajayi was dispensing controlled substances that were highly abused in the area, including hydrocodone, promethazine with codeine, and carisoprodol;

• Ajayi required cash payments for prescriptions (around $240-260), even if the patient had insurance;

• Ajayi was filling prescriptions for groups of people that were all going to the same doctor and getting the same drugs; and

• These patients were traveling extended distances to pick up prescriptions from the clinic and were visiting multiple pharmacies ("pharmacy shopping") to get them filled.

*See* Gov. Exhibits, CR ECF Nos. 1845-2 and 1845-3; Trial Tr. Vol. 1 at 83-86, 91, 101-02, 107, 127, 232-33, 235-42, CR ECF No. 1899; Trial Tr. Vol. 2, 76-81, 99-107, CR ECF No. 1900. Ajayi's pharmacy filled these illegitimate prescriptions approximately 350 times. Trial Tr. Vol 1 at 101, CR ECF No. 1899.

After the government closed its evidence, Ajayi took the stand. Trial Tr. Vol. 2 at 119, CR ECF No. 1900. He began his testimony by unequivocally stating that he did not know that Capistrano was writing illegitimate prescriptions. *Id.* at 120. Ajayi claimed that Kincade introduced himself as a caregiver for the patients for whom he picked up prescriptions. *Id.* at 157-59. And Ajayi testified that he had no idea that Kincade was selling the drugs on the street. *Id.* at 159. He claimed that Capistrano, his staff, and Kincade had simply deceived him. *Id.* at

185-86, 293. Even so, the jury found Ajayi guilty on all five counts. Jury Verdict, CR ECF No. 1209.

### D. Ajayi Objects to the PSR, Denies Knowledge of the Conspiracy, and Disputes that Trial Testimony was Untruthful.

The PSR detailed Ajayi's role in the pill-mill conspiracy and then determined that he should be accountable for "the controlled substances he distributed from Remco Pharmacy and Remcare Pharmacy, which were issued under Capistrano's DEA Registration, knowing they were issued outside the scope of professional practice and without legitimate medical purposes." PSR ¶¶ 35-44, CR ECF No. 1574-1. The PSR also detailed Ajayi's untruthful testimony at trial about his lack of knowledge of the Capistrano pill-mill scheme; his denial of red flags in the scheme; and his relationship with Kincade—all of which was "contradictory to the information provided by multiple coconspirators, as well as the intercepted phone calls." PSR ¶ 48, CR ECF No. 1574-1. As a result, the PSR explained that this Court had to determine whether Ajayi provided perjured testimony. PSR ¶¶ 50-51, CR ECF No. 1574-1.

Then, after grouping the five counts of conviction, the PSR applied U.S.S.G. § 2D1.1 and found a base offense level of 28 based on the converted drug weight of the controlled substances. PSR ¶¶ 55-56, CR ECF No. 1574-1. After adding two levels for maintaining a drug premises under U.S.S.G. § 2D1.1(b)(12), two levels for abusing a position of trust under U.S.S.G. § 3B1.3, and two levels for obstructing justice under U.S.S.G. § 3C1.1, Ajayi's total offense level was 34. PSR ¶¶ 57-61, CR ECF No. 1574-1. With no criminal history, the advisory guideline range was 151 to 188 months. PSR ¶ 98, CR ECF No. 1574-1. Ajayi filed several written

objections to the PSR, including to the drug quantity, the premises enhancement, and the obstruction enhancement for perjury. Objections 1-11, CR ECF No. 1684.

### E.     Sentencing and Appeal

At sentencing, Ajayi's counsel persisted in presenting arguments in support of these objections. Sentencing Tr. at 3-5, CR ECF No. 1881.  He argued that there was substantial evidence at trial that Kincade intentionally hid the pill-mill scheme from Ajayi, which undercut any finding that every single prescription was illegal. *Id.*  But the government argued that Ajayi was simply taking issue with the jury's verdict as to his knowledge of the conspiracy. *Id*. at 6-7.

The Court overruled the objections. *Id.* at 11. The Court found that the PSR "use[d] an appropriate method to evaluate the evidence, the defendant and his co-conspirator's role in the distribution of these controlled substances, and that this amount is a reasonable approximation of the drug quantity the defendant is accountable for." *Id.*  The Court calculated the advisory guideline range, heard from several witnesses on Ajayi's behalf, and considered his allocution. *Id*. at 13-24. The Court ultimately imposed an aggregate sentence of 151 months with three years of supervised release. *Id*. at 24.

Ajayi appealed his conviction and sentence on multiple grounds. *See United States v. Ajayi*, 64 F. 4th 243, 246 (5th Cir. 2023). Ajayi made two types of claims: (1) challenging the jury charge; and (2) disputing the Court's factual findings at sentencing. *Id*. at 246-47.  The Fifth Circuit affirmed Ajayi's conviction and sentence in all respects. *Id*. at 251. The judgment issued as mandate April 12, 2023. CR ECF No. 2129.  Ajayi did not petition for certiorari. He timely filed the instant motion for relief under 28 U.S.C. § 2255. Mot. Vacate 1-8, ECF No. 1.

### III.    GROUNDS FOR RELIEF

Ajayi raises two claims of ineffective assistance of counsel. Mot. Vacate 1-6, ECF No. 1. First, he alleges that his trial counsel, John Helms, did not properly inform him of the "consequences" of going to trial versus pleading guilty. Mot. Vacate 4, ECF No. 1. Second, he claims Helms was ineffective at sentencing for failing to object to the use of relevant conduct. *Id.* at 5. For the reasons stated below, the Court concludes that Ajayi has not shown deficient performance or prejudice for either of his ineffective assistance claims. Thus, his § 2255 motion must be denied.

### IV.   APPLICABLE LAW

#### A.   Standard of Review

Under 28 U.S.C. § 2255, a prisoner may move the convicting court to vacate, set aside, or correct his conviction or sentence on four grounds: "(1) the sentence was imposed in violation of the Constitution or laws of the United States; (2) the court was without jurisdiction to impose the sentence; (3) the sentence exceeds the statutory maximum sentence; or (4) the sentence is 'otherwise subject to collateral attack.'" 28 U.S.C. § 2255(a); *see United States v. Placente*, 81 F.3d 555, 558 (5th Cir. 1996) (citation omitted).

"It has, of course, long been settled law that an error that may justify reversal on direct appeal will not necessarily support a collateral attack on a final judgment." *United States v. Addonizio*, 442 U.S. 178, 184 (1979). "Section 2255 does not offer recourse to all who suffer trial errors." *United States v. Capua*, 656 F.2d 1033, 1037 (5th Cir. Unit A Sept. 1981). It may also "not do service for an appeal." *United States v. Frady*, 456 U.S. 152, 165 (1982). After conviction and the exhaustion or waiver of all appeals, the Court is "entitled to presume" that the prisoner "stands fairly and finally convicted." *Id.* at 164.

### B. Law Applicable to Review of Ineffective-Assistance Claims under § 2255.

Ineffective-assistance-of-counsel ("IAC") claims can be raised under § 2255. *Massaro v. United States*, 538 U.S. 500, 504 (2003). To establish IAC, "[F]irst, the defendant must show that counsel's performance was deficient. This requires showing that counsel made errors so serious that counsel was not functioning as the 'counsel' guaranteed the defendant by the Sixth Amendment. Second, the defendant must show that the deficient performance prejudiced the defense." *Strickland v. Washington*, 466 U.S. 668, 687 (1984).

To show deficient conduct under *Strickland*, the burden is on the defendant to show that his counsel's representation fell below an objective standard of reasonableness, by identifying acts or omissions of counsel "that are alleged not to have been the result of reasonable professional judgment." *Strickland*, 466 U.S. at 690. A district court then determines whether, "in light of all the circumstances, the identified acts or omissions were outside the wide range of professionally competent assistance." *Id.* There is a strong presumption that the performance of counsel falls within this range. *United States v. Samuels*, 59 F.3d 526, 529 (5th Cir. 1995). Defendant cannot overcome this presumption with after-the-fact accusations that lack supporting evidence. *See United States v. Pineda*, 988 F.2d 22, 23 (5th Cir. 1993) (noting that although pro se § 2255 motions are construed liberally, even under the rule of liberal construction, "mere conclusory allegations on a critical issue are insufficient to raise a constitutional issue"); *Ross v. Estelle*, 694 F.2d 1008, 1011 (5th Cir. 1983) ("Absent evidence in the record, a court cannot consider a habeas petitioner's bald assertions on a critical issue in his *pro se* petition . . . to be of probative evidentiary value."). If counsel provides objectively unreasonable representation during the plea process, the defendant must prove prejudice by showing "that there is a

reasonable probability that, but for counsel's errors, he would not have pleaded guilty and would have insisted on going to trial." *Hill v. Lockhart*, 474 U.S. 52, 59 (1985).

To prove prejudice generally, a defendant must establish "a reasonable probability that, but for counsel's unprofessional errors, the result of the proceeding would have been different." *Strickland*, 466 U.S. at 694. This showing "requires a 'substantial,' not just 'conceivable,' likelihood of a different result." *Cullen v. Pinholster*, 563 U.S. 170, 189 (2011). "Surmounting *Strickland*'s high bar is never an easy task." *Padilla v. Kentucky*, 559 U.S. 356, 371 (2010). Failure to meet either the deficient-performance or prejudice prongs will defeat a claim of ineffective-assistance. *United States v. Stewart*, 207 F.3d 750, 751 (5th Cir. 2000). The reviewing court need not address both components if there is an insufficient showing on one. *Id.*

## V. ANALYSIS

### A. Claim that Counsel was Ineffective During the Plea-Bargain Stage

Ajayi alleges his trial counsel "rendered ineffective assistance by inducing me to not accept a plea agreement and leading me to believe that he would win the case for me at trial." *Id*. at 4. Ajayi also claims that his counsel "never bothered to inform me of the consequences that I might face should he not be successful in his strategy." *Id*. at 5. And Ajayi alleges that his trial counsel "chose not to engage in the defense process thus, leaving my exposure to a guilty verdict at an assured level." *Id.* These claims amount to nothing more than a post-conviction disagreement over trial strategy, rather than a bona fide claim that Helms failed to advise Ajayi regarding the consequences of proceeding to trial. Ajayi cannot demonstrate that his trial counsel was constitutionally ineffective on this basis.

Ajayi's arguments on his first claim are disjointed—he cites precedent that pertains to trial counsel's obligation to inform a defendant about potential sentencing exposure, but he does not claim that his counsel failed to provide such counsel. Instead, Ajayi alleges that Helms promised to "aggressively argue" his case at trial, but then "chose to not act in this manner." *Id.* at 4. In other words, Ajayi takes issue with his counsel's trial strategy—he claims Helms "induced" him to "not accept a plea agreement" and "led him to believe" that he would win the case at trial. *Id*. But a dispute over trial performance, and a dissatisfaction with the ultimate result, does not amount to deficient performance.

Under Supreme Court precedent, the right to effective assistance of counsel extends to plea bargaining. *See Missouri v. Frye*, 566 U.S. 134, 145 (2012). Regardless of whether a defendant pleads guilty or proceeds to trial, the standard for constitutional claims of ineffective assistance of counsel is governed by *Strickland*. *See Hill v. Lockhart*, 474 U.S. 52, 57-58 (1985). The Supreme Court has declined to delineate with precision what constitutes deficient performance as to counsel's substantive advice regarding whether a defendant should accept or reject a plea offer. *See Frye*, 566 U.S. at 145. ("[b]argaining is, by its nature, defined to a substantial degree by personal style" and "[t]his case presents neither the necessity nor the occasion to define the duties of defense counsel in those respects"). This Court "must judge the reasonableness of counsel's challenged conduct on the facts of the particular case" and "evaluate [that] conduct from counsel's perspective at the time." *Strickland*, at 689-90.

"The negotiation of a plea bargain is a critical phase of litigation for purposes of the Sixth Amendment right to effective assistance of counsel." *See United States v. Rivas-Lopez*, 678 F.3d 353, 356 (5th Cir. 2012) (quoting *Padilla v. Kentucky*, 559 U.S. 356 (2010)). "When considering

11

whether to plead guilty or proceed to trial, a defendant should be aware of the relevant circumstances and the likely consequences of his decision so that he can make an intelligent choice." *Id.* at 356-57. Ajayi claims his counsel failed to meet this standard because:

- Helms "rendered ineffective assistance by inducing me to not accept a plea agreement and leading me to believe that he would win the case for me at trial;"

- Helms "stated that he would aggressively argue my actions and the relative facts attached to what actually occurred, but Helms chose not to act in this manner;"

- Helms "never bothered to inform me of the consequences that I might face should he not be successful with his strategy;" and,

- Helms "chose not to engage in the defense process."

Mot. Vacate 4-5, ECF No. 1. These claims are conclusory. Ajayi does not identify what "plea agreement" was offered before he proceeded to trial, and he does not explain how this hypothetical plea agreement would have been more favorable than the sentence that was ultimately imposed. A criminal defendant "has no right to be offered a plea," much less to unilaterally dictate its terms. *Frye*, 566 U.S. at 148-49; *see also Weatherford v. Bursey*, 429 U.S. 545, 561 (1977) ("there is no constitutional right to plea bargain").

Furthermore, the remainder of Ajayi's allegations amount to nothing more than a dispute over Helms's trial strategy. While Ajayi claims his counsel "chose not to engage in the defense process," the record demonstrates otherwise. A review of the record demonstrates that Helms mounted an aggressive and thorough defense when he:

- Began the trial by arguing to the jury that Ajayi did not know the prescriptions he filled were illegitimate, (Trial Tr. Vol. 1, 55-62, CR ECF No. 1899);

- Cross-examined government witness Kristy Smith, a Drug Enforcement Agency Diversion Investigator, at length about the data from Ajayi's pharmacy, the

complexity of her investigation, and the "red flags" that had been identified by the government, (*Id*. at 164-229, 243-48);

• Cross-examined government witness Johnny Sosa, a DEA financial investigator, attempting to explain Ajayi's interpretation of certain intercepted phone calls, (*Id*. at 266-73);

• Cross-examined government witness Kincade, attempting to discredit him, to elicit testimony that Kincade told Ajayi he was a "caregiver," and highlighting the benefit Kincade hoped to obtain by testifying, (Trial Tr. Vol. 2 23-40, CR ECF No. 1900);

• Cross-examined government witness John Van Ness, a DEA investigator, to emphasize that no one told Ajayi that there were issues with Dr. Capistrano even though their investigation of him spanned several months, (*Id.* at 48);

• Cross-examined government witness Tim King, a pain management physician, to elicit testimony about cancer patients and pain medication in line with Ajayi's belief that Dr. Capistrano's prescriptions were legitimate and to emphasize that Ajayi did not have the same access to patient records that Dr. King did, (*Id.* at 81-92);

• Cross-examined government witness Diane Ginsburg, a professor of pharmacy law and bioethics, calling into question her knowledge of Ajayi's pharmacy and practices and noting the lower distribution rate for Remcare, (*Id.* at 108-17);

• Presented Ajayi's testimony to the jury, which allowed Ajayi to unequivocally deny any knowledge that the Capistrano prescriptions were illegitimate, to explain why certain "red flags" did not concern him, and to claim that his contracts with hospice explained the unusually large number of controlled substance prescriptions, (*Id.* at 119-86, 283-94);

• Argued at closing that the government had failed to prove that Ajayi actually knew the Capistrano prescriptions were illegitimate, given that Ajayi believed the prescriptions were appropriate for oncology patients and that Kincade and others were trying to "trick" the pharmacists for the duration of the scheme, (*Id.* at 336-43);

• Objected to several jury instructions, leading to revisions to the final jury charge, (Proposed Jury Charge 5-49, CR ECF No. 1141; Jury Charge 1-22, CR ECF No. 1208);

- Objected to the PSR—including the drug quantity and base offense level, to the enhancement for maintaining a drug premises, to the obstruction of justice enhancement based on his perjury at trial, and at least thirteen other "clarifications," (Objections 1-11, CR ECF No. 1684);

- Persisted in those objections at the sentencing hearing, (Sentencing Tr. 2-5, CR ECF No. 1881);

- Presented character witnesses at sentencing, (*Id.* at 13-21); and

- Argued at sentencing for a low sentence given Ajayi's age, health, and stance in the community, (*Id*. at 21).

In short, Ajayi's claims that his counsel abandoned him at trial and sentencing are directly refuted by the record, and he has not shown deficient performance on this basis.[2]

Furthermore, Ajayi cannot show prejudice. Here, Ajayi claims that "[i]f Helms had explained that his approach had a strong possibility of failing and the consequences of such would be devastating or explained that he did not intend to fight on my behalf by entering appropriate cross-examination or objections, there is no doubt I would have opted for a plea agreement arrangement." Mot. Vacate 5, ECF No. 1. This claim is insufficient to show prejudice.

Where a defendant proceeds to trial, demonstrating prejudice from counsel's performance during the plea-bargain stage requires several showings:

---

[2] Ajayi offers a list of "facts" in his § 2255 motion, without tying that list to any specific ineffective-assistance claim. Mot. Vacate 2, ECF No. 1. These statements are baseless and conclusory allegations that are belied by the trial record, and they cannot save his inadequate allegations. For example, Ajayi states that Helms "assured [Ajayi] that the sentence would not exceed five years. Obviously he was out of touch with what the prosecution and judge had in mind and was content with whatever the prosecution's actions were." *Id.* at 2-3. Ajayi does not explain in what context these assurances were made; allege that they influenced his decision to proceed to trial; claim that he was promised a particular sentence; or even allege that a plea agreement limiting his sentence to five years was offered by the government—an unlikely event given that he faced five counts that carried a maximum exposure of 55 years in prison. As a result, Ajayi has failed to demonstrate that his counsel's conduct was constitutionally deficient in this list of facts.

> [H]e must show that but for the ineffective advice of counsel there is a reasonable probability that the plea offer would have been presented to the court (i.e. that the defendant would have accepted the plea and the prosecution would not have withdrawn it in light of intervening circumstances), that the court would have accepted its terms, and that the conviction or sentence, or both, under the offer's terms would have been less severe than under the judgment and sentence that in fact were imposed.

*United States v. Reed*, 719 F.3d 369, 373 (5th Cir. 2013) (internal marks omitted) (quoting *Lafler v. Cooper*, [566 U.S. 156, 163] 132 S. Ct. 1376, 1385 (2012)). Ajayi has not met any of these prerequisites. He has not shown (1) a plea offer existed; (2) what the terms of that offer were; (3) that he would have accepted those terms; (4) that the Court would have accepted the plea; or (5) that the resulting sentence would have been less severe than the sentence that was ultimately imposed. As a result, Ajayi cannot show prejudice.

Instead, the record reveals that Ajayi was determined to go to trial. Ajayi maintained his claims of innocence. He perjured himself at trial, denying any knowledge of impropriety despite the weight of evidence against him. PSR ¶¶ 50-51, CR ECF No. 1574-1. He persisted in this posture at sentencing, alleging that he was "deceived" and that the allegations did not represent who he was. Sentencing Tr. 22-23, CR ECF No. 1881. Even now, in his § 2255 motion, Ajayi claims that he was an "honest, professional pharmacist." Mot. Vacate 2, ECF No. 1. Ajayi cannot demonstrate prejudice based on some hypothetical plea deal that he was never going to take. *See United States v. Scribner*, 790 F. App'x 626, 629-31 (5th Cir. 2019) (affirming the court's conclusion that the defendant would not have pleaded guilty because he maintained his innocence).

As for any prejudice stemming from his counsel's trial performance, Ajayi likewise fails to carry his burden because he does not explain how the additional actions he alleges should have

15

been taken would have led to a different verdict.[3] While he claims his counsel did not "engage in the defense process," "[c]onclusory allegations" of deficient performance and prejudice do not satisfy the *Strickland* test. *Miller v. Johnson*, 200 F.3d 274, 282 (5th Cir. 2000). Ajayi's ground one fails under either *Strickland* prong, such that this first ground must be denied.

> **B. Claim that Counsel was Ineffective in Failing to Object to the use of "Relevant Conduct"**

Ajayi's second ineffective-assistance claim is that counsel Helms was ineffective at sentencing for failing to object to the use of "relevant conduct." Mot Vacate 5, ECF No. 1. His arguments are two-fold: (1) the prosecutor offered damaging testimony at trial, to which Ajayi urged objections, but Helms just let the statements go on the record; and (2) Helms's "failure to object to the use of relevant conduct at the time of sentencing must be deemed to constitute ineffectiveness." *Id.* at 6. Both claims are conclusory under *Strickland*.

As for the first allegation, the only argument Ajayi offers is that the prosecutor offered damaging testimony, to which Ajayi urged objections, but Helms let them "go on the record." "Had Helms raised objections to the relevant conduct of the prosecutor and statements given in testimony, the government would have been obligated to prove by a preponderance of the evidence that the charges were valid and that no coercion or promises had occurred." *Id.* at 5. Ajayi does not explain what testimony he is referring to, how that testimony was improper, what

---

[3] As before, Ajayi includes a list of "facts" without connecting them to any claim of ineffective assistance. Mot. Vacate 2, ECF No. 1. Regarding his trial counsel's performance, these allegations include that Helms "did not demonstrate basic knowledge" of the drugs; never sought competing expert testimony; and did not obtain a subpoena for Capistrano's records. *Id.* at 2. But Ajayi makes no effort to detail what knowledge counsel lacked, which expert counsel should have called, and what records Ajayi believes were overlooked. He makes no effort to explain why there is a reasonable probability of acquittal

objections would have been successful, and how that would have altered the outcome of his trial. And while Ajayi claims that Helms's actions resulted in his "side of the story" not being presented to the jury—the record does not support this claim.

As noted above, Ajayi testified to the jury at length, denying knowledge of any illegality, offering explanations for "red flags," and defending his purported belief that the prescriptions were appropriate in the face of ample evidence to the contrary. His counsel also reinforced this narrative through cross-examination and in his opening and closing arguments. The jury heard Ajayi's side of the story—they just did not believe it. As a result, Ajayi has failed to meet the deficiency prong of *Strickland.*

As for the second allegation, Ajayi again does not identify what additional objections should have been raised at sentencing, why they would have succeeded, or what the impact would have been on his ultimate sentence. He points to Helms's failure to object to "relevant conduct," but the guideline calculations do not rely on relevant conduct. Rather, Ajayi was sentenced only for prescriptions filled at his pharmacies for Capistrano as part of the pill mill conspiracy. PSR ¶¶ 44-45, 56, CR ECF No. 1574-1; PSR Addendum at 1-2, CR ECF No. 1689-1. And, contrary to Ajayi's claims, Helms did object to the PSR and at sentencing. He challenged the drug quantity, the drug premises enhancement, and the obstruction enhancement. Ajayi has failed to show deficiency.

Furthermore, Ajayi has not shown prejudice. He alleges that "[i]t is clear that, but for counsel's unreasonable failure to object to the prosecutor's stance, I would have at the very least

---

had counsel done the things about which Ajayi complains. His conclusory allegations of deficient performance and prejudice fail to meet either *Strickland* prong as a result.

had an opportunity to obtain a lesser sentence." Mot. Vacate 6, ECF No. 1. But the record rebuts this claim, given that his counsel did raise objections to the drug quantity, drug premises, and obstruction, and the Court overruled each of them, finding the reasoning of the PSR to be well-supported. Sentencing Tr. 11, CR ECF No. 1881. Absent more, Ajayi has not shown prejudice.

"Mere conclusory allegations in support of a claim of ineffective assistance of counsel are insufficient to raise a constitutional issue." *Hall v. United States*, No. 1:17-cv-517, 2021 WL 836863 at *7 (E.D. Tex. Jan. 27, 2021), *rep. and rec. adopted*, No. 1:17-cv-517, 2021 WL 827687 (E.D. Tex. Mar. 3, 2021) (citing *Green v. Johnson*, 160 F.3d 1029, 1042 (5th Cir. 1998)). "Absent evidence in the record, a court cannot consider a habeas petitioner's bald assertions on a critical issue in his pro se petition (in state and federal court), unsupported and unsupportable by anything else contained in the record, to be of probative evidentiary value." *Id.* (quoting *Ross v. Estelle*, 694 F.2d 1008, 1011-12 (5th Cir. 1983)). Ajayi has not shown either deficient performance or any resulting prejudice, and his second ground for relief must be denied.

For all of these reasons, Ajayi's § 2255 motion must be denied.

## VI.    CERTIFICATE OF APPEALABILITY

Federal Rule of Appellate Procedure 22 provides that an appeal may not proceed unless a certificate of appealability (COA) is issued under 28 U.S.C. § 2253. Fed. R. App. P. 22 (b). Rule 11 of the Rules Governing Section 2255 Proceedings now requires the Court to "issue or deny a certificate of appealability when it enters a final order adverse to the applicant." Rules Governing Section 2255 Proceedings in the United States District Courts, Rule 11(a) (December 1, 2009). This Court may only issue a COA if "the applicant has made a substantial showing of the denial of a constitutional right." 28 U.S.C. § 2253(c)(2). A petitioner satisfies this standard by showing

"that jurists of reason could disagree with the district court's resolution of his constitutional claims or that jurists of reason could conclude the issues presented are adequate to deserve encouragement to proceed further." *Miller-El v. Cockrell*, 537 U.S. 322, 326 (2003) (citing *Slack v. McDaniel*, 529 U.S. 473, 484 (2000)).

The Court concludes that Christopher Kalejaiye Ajayi has not made a showing that reasonable jurists would question this Court's rulings and, accordingly, **DENIES** a certificate of appealability for the reasons stated in this order.

### VII. CONCLUSION and ORDER

It is therefore **ORDERED** that Christopher Kalejaiye Ajayi's motion to vacate under 28 U.S.C. § 2255 (ECF No. 1) is **DENIED**. It is further **ORDERED** that a certificate of appealability is **DENIED**.

**SO ORDERED** this **30th day of May, 2024**.

_____
Reed O'Connor
UNITED STATES DISTRICT JUDGE